IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

ERNIE VAN DE'R VAA'RTE
YOUNG, JR,

Case No. 1:17-cv-01630-CL

    Plaintiff,

v.

**ORDER**

RONALD D. GRENSKY, et al,

    Defendants.

CLARKE, Magistrate Judge.

Plaintiff Ernie Young seeks to proceed *in forma pauperis* ("IFP") in this action. For the reasons stated below, Plaintiff's Amended Complaint (#5) is dismissed without prejudice and with leave to refile a Second Amended Complaint within thirty days of this ruling. Plaintiff's IFP application (#2) is held in abeyance and will be considered when the amended complaint is filed.

## LEGAL STANDARD

Generally, all parties instituting any civil action in United States District Court must pay a statutory filing fee. 28 U.S.C. § 1914(a). However, the federal IFP statute, 28 U.S.C. §

1915(a)(1), provides indigent litigants an opportunity for meaningful access to the federal courts despite their inability to pay the costs and fees associated with that access. To authorize a litigant to proceed IFP, a court must make two determinations. First, a court must determine whether the litigant is unable to pay the costs of commencing the action. 28 U.S.C. § 1915(a)(1). Second, it must assess whether the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

In regard to the second of these determinations, district courts have the power under 28 U.S.C. § 1915(e)(2)(B) to screen complaints even before the service of the complaint on the defendants, and must dismiss a complaint if it fails to state a claim. Courts apply the same standard under 28 U.S.C. § 1915(e)(2)(B) as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id.*

Pro se pleadings are held to less stringent standards than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). That is, the court should construe pleadings by pro se plaintiffs liberally and afford the plaintiffs the benefits of any doubt. *Karim-Panahi v. Los*

*Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988) (citation omitted). Additionally, a pro se litigant is entitled to notice of the deficiencies in the complaint and the opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Id.*

## DISCUSSION

On October 16, 2017, Plaintiff Ernie Young filed a Complaint against six defendants, including a Jackson County Circuit Court judge, Hon. Ronald Grensky, a Jackson County Deputy District Attorney, Ben Lull, and three law enforcement officers from the Eagle Point Police Department, and one caseworker from Child Protective Services. There are plenty of factual allegations contained in the complaint, and all of them appear to arise out of a series of events and incidents involving domestic disputes with Plaintiff's ex-girlfriend or ex-wife ("Ex"), their children, and various law enforcement and court personnel. Many of Plaintiff's allegations involve violence or other actions taken by Plaintiff's "Ex" against him. Plaintiff's "Ex" is not a party to the case, however, and even if she were a party, it is unclear whether Plaintiff makes any cognizable legal claim against her. Many of the allegations Plaintiff asserts against law enforcement personnel seem to stem from Plaintiff's Ex – either her actions or her statements, which Plaintiff claims are false. For the reasons below, Plaintiff's case is dismissed without prejudice. Plaintiff may file a second amended complaint that complies with the federal pleading requirements, as long as that amended complaint cures the deficiencies identified below. Failure to do so could result in the dismissal of the case with prejudice.

### I.     Judge Grensky is entitled to absolute judicial immunity.

Judges and those performing judge-like functions are absolutely free from liability for damages for acts performed in their official capacities. *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir.1986) (en banc). Judicial immunity from claims for damages generally can be overcome

only in two sets of circumstances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *See Hyland v. Wonder*, 117 F.3d 405, 413 n. 1 (9th Cir.1997) (holding that judge may lose protection of judicial immunity when performing administrative act). Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). As long as the judge has jurisdiction to perform the "general act" in question, he or she is immune however erroneous the act may have been, however injurious the consequences of the act may have been, and irrespective of the judge's claimed motivation. *Harvey v. Waldron*, 210 F.3d 1008, 1012 (9th Cir.2000) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)).

In this case, Plaintiff does not allege that Judge Grensky took any actions outside of his judicial capacity. Indeed his main complaints against the judge include decisions made regarding a "fabricated restraining order" and other decisions regarding Plaintiff's disputes with his Ex, including child custody, conflicting testimony, and a denial of his own restraining order. None of these allegations meet the requirements to allow Plaintiff to bring a claim for damages against a judge. Therefore the claims against this defendant are dismissed.

## II.   DDA Ben Lull is entitled to absolute prosecutorial immunity.

A prosecutor is absolutely immune when acting as an advocate for the state by engaging in conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *see also Van de Kamp v. Goldstein*, 555 U.S. 335 (2009). This means that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protection of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).


Page 4 – ORDER

Prosecutors are not absolutely immune from liability for administrative actions or investigative functions not closely related to either trial preparation or the trial process. *See, e.g., Hart v. Hodges*, 587 F.3d 1288 (11th Cir. 2009) cert. denied 130 S. Ct. 3389 (2010). Investigative functions include authorizing a warrantless wiretap in the interest of national security, *Mitchell v. Forsyth*, 472 U.S. 511, 520 (1985), and giving legal advice to police officers. *Burns v. Reed*, 500 U.S. 478, 496 (1991). In such a capacity, a prosecutor would only be entitled to qualified immunity. By contrast, prosecutors have been held absolutely immune to carry out such advocacy actions as: deciding whether to prosecute; engaging in pretrial litigation activities concerning applications for arrest and search warrants, bail applications, and suppression motions, *Simon v. City of N.Y.*, 727 F.3d 167, 171–74 (2d Cir. 2013); preparing for trial, including interviewing witnesses and evaluating evidence, *Giraldo v. Kessler*, 694 F.3d 161, 167 (2d Cir. 2012); failing to turn over exculpatory material to defense, *Warney v. Monroe Cnty.*, 587 F.3d 113, 120–26 (2d Cir. 2009), *cert. denied*, 131 S. Ct. 82 (2010); plea bargaining; entering into release-dismissal agreement, *Cady v. Arenac Cnty.*, 574 F.3d 334, 341 (6th Cir. 2009); and making sentence recommendations, *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 750–51 (9th Cir. 2009). Using a grand jury to initiate prosecution and efforts made to indict are both covered by absolute immunity. *Milstein v. Cooley*, 257 F. 3d 1004, 1012 (2001).

Prosecutorial immunity protects the prosecutor in her role as an advocate even if she acted in clear violation of law, or even "with an improper state of mind or improper motive." *Shmueli v. City of N.Y.*, 424 F.3d 231, 237 (2d Cir. 2005) (citing *Bernard v. Cnty. of Suffolk*, 356 F.3d 495 (2d Cir. 2004)). In *Imbler v. Pachtman*, the Supreme Court held that a prosecutor was entitled to absolute immunity for "initiating a prosecution and in presenting the State's case."

424 U.S. 409. The Court found that prosecutorial immunity protected even the knowing use of false testimony at trial and deliberate suppression of exculpatory evidence. *Id.*

Plaintiff does not allege any claims against DDA Ben Lull other than those arising out of prosecutorial decisions and warrants issued – i.e. conduct that is "intimately associated with the judicial phase of the criminal process." In one particularly confusing allegation Plaintiff asserts that "Even though Deputy DA Benjamin D. Lull is trying to fabricate that the warrant went out on my April 10, 2017, when in Court, April 12, 2017, everyone checked and there was no warrant." Later he clarifies that his "Ex" was granted a "Fabricated stalking order" on April 17, 2017, and the next day, April 18, he "was served the warrant, and the "temporary stalking order, and then arrested." He claims that he had then and still has now "physical proof" that he was not harassing his Ex "telephonically." Regardless of whether or not DDA Ben Lull "deprived [Plaintiff] the rights to (Equality), to be free from (DISCRIMINATION) when it comes to being protected by the laws of the United States, and here in Jackson County, Oregon," as alleged, it is clear that all of Plaintiff's allegations arise out of conduct for which Mr. Lull has absolute prosecutorial immunity. Therefore, the claims against this defendant are dismissed.

### III. Plaintiff's claims against Daniel Cardenas, Bill Fisher, and CJ Davis do not meet the federal pleading standards and are dismissed without prejudice.

Defendants Daniel Cardenas, Bill Fisher, and CJ Davis are law enforcement officers for the Eagle Point Police Department. Plaintiff's allegations against them appear to arise out of his complicated relationship with his Ex and their history, their living arrangements, custody of their son, and other tangentially related interactions with law enforcement. Particularly, Plaintiff claims that the officers failed to take actions that Plaintiff wanted them to take or believes they should have taken. For instance, Plaintiff claims that his Ex and Robert Ballejos were "telephonically" harassing Plaintiff by sending "pornographic content and pictures to my phone

as well as threats." "Yet officer Cardenas, Fisher, and Davis did not care about that. They would tell me to ignore it, change my number, but would not charge or make an arrest on my Ex or Mr. Ballejos ever." While the Court understands that Plaintiff believes that law enforcement treated Plaintiff unfairly in some of the events arising out of that relationship, Plaintiff does not state a cognizable claim that his civil rights have been violated by any of the state actors. The fact that officers have not believed him, or not taken him seriously, does not rise to the level of a constitutional violation.

One allegation against Officer Cardenas does appear to come close to stating a cognizable claim. Plaintiff claims that Cardenas attempted to force Plaintiff to "bring my son and myself to Eagle Point so he could give my son to my Ex," which Plaintiff claims was in direct conflict with the judge's no contact order. Plaintiff claims that Cardenas threated him with a warrant if he did not do as he asked. Plaintiff asked him what he would be arrested for, and claims that Cardenas told him "telephonic harassment." Plaintiff claims that Cardenas did not have probable cause for that charge. Unfortunately, it appears from Plaintiff's other allegations that Officer Cardenas did in fact have a warrant for his arrest, which would create a rebuttable presumption of probable cause, and that Plaintiff was arrested pursuant to such a warrant.

The Ninth Circuit has held that to prevail on a § 1983 claim for false arrest, a plaintiff must demonstrate that there was no probable cause to arrest him. *See, e.g., Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). Probable cause exists when, under the totality of the circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime. *Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003). In determining the issue of probable cause, a police officer has the right to rely on information supplied by a citizen of the community as true,

and a citizen of the community that identifies himself and volunteers information to police officers is entitled to be trusted and is presumed to be credible and reliable. *Oester v. Datan*, 2014 WL 4446062, at *2 (D. Or. Sept. 9, 2014) (citing *United States v. Greany*, 929 F.2d 523 (9th Cir1991); *United States v. Butler*, 74 F.3d 916 (9th Cir. 1996)).

Additionally, the United States Supreme Court has held that "an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry. *Gerstein v. Pugh*, 420 U.S. 103, 118 (1975). This is a rebuttable presumption, which may be rebutted where the plaintiff can show "fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Hobbs v. City of Long Beach*, 534 Fed.Appx. 648 (9th Cir. 2013), quoting A*wabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).

After a thorough review of the Complaint, the Court determines that it fails to meet the pleading standards for federal court. The factual allegations are abundant, but convoluted, and it is unclear what legal claims the Plaintiff is making against which defendants. Although Plaintiff alleges unfair treatment and discourteous behavior by the law enforcement officers, this type of conduct does not rise to the level of a constitutional violation. Additionally, Plaintiff's claims of fraud and fabricated evidence, while more serious in theory, are wholly conclusory. Plaintiff must allege specific facts as to what was fraudulent or fabricated so that the Court and the parties can determine the basis for the claims alleged.

I cannot say that it would be impossible for Plaintiff to allege facts sufficient to state a claim for relief, particularly as to his interactions with law enforcement. Because it is not "absolutely clear that the deficiencies of the complaint could not be cured by amendment[,]" Plaintiff should be given an opportunity to amend and refile the claims against defendants

Cardenas, Fisher, and Davis. *Stanger v. City of Santa Cruz*, 653 F.2d 1257, 1257-58 (9th Cir.1980); *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980).

## IV. Plaintiff's allegations against Kirstin Stroud do not state a claim for relief.

Defendant Kirstin Stroud is a Child Protective Services / DHS caseworker. "[S]ocial workers have absolute immunity when they make 'discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents.'" *Beltran v. Santa Clara County*, 514 F.3d 906, 908 (9th Cir. 2008) (en banc) (per curiam) (quoting *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir. 2003) (en banc)); *see also Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1108-09 (9th Cir. 2010) (concluding social workers were absolutely immune from suit for their involvement in foster care license revocation proceedings); *Meyers v. Contra Costa Cnty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987). "To the extent, however, that social workers also make discretionary decisions and recommendations that are not functionally similar to prosecutorial or judicial functions, only qualified, no absolute immunity, is available." *Miller*, 335 F.3d at 898; *see also Costanich*, 627 F.3d at 1109 (concluding that state social worker not entitled to absolute immunity for investigating charges or for filing declaration in support of guardianship termination proceedings); *Beltran*, 514 F.3d at 908-09 (concluding that social workers are not entitled to absolute immunity for their investigatory conduct).

Even if the defendant is only entitled to qualified immunity, however, Plaintiff must still allege facts that show that he suffered a violation of a "clearly established" constitutional right, and "must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

All of Plaintiff's allegations regarding Ms. Stroud revolve around her work as the CPS or DHS caseworker for Plaintiff's son. Plaintiff claims that Stroud was "involved in trying to allow my Ex to have temporary custody of our son, when my Ex was ordered by [Judge Grensky] [not to have] any in-person contact with our son whatsoever until the Department of Human Services made recommendations." He claims that Stroud, along with the other named defendants, "came together to commit conspiracy against me, to try and have me wrongfully and falsely arrested and falsely imprisoned, for a crime never committed against my Ex ever by me, so they could help my Ex, Ms. Wedin to attain custody that way." While Plaintiff then claims to have "solid proof" of everyone's part in the alleged conspiracy, he does not include even bare allegations of specific conduct on the part of each defendant. Instead, his claim that Stroud was trying to have him wrongfully arrested is conclusory and does not meet the pleading standards.

As with the law enforcement officers above, I cannot say that it would be impossible for Plaintiff to allege facts sufficient to state a claim for relief as to his interactions with Ms. Stroud. Because it is not "absolutely clear that the deficiencies of the complaint could not be cured by amendment[,]" Plaintiff should be given an opportunity to amend and refile the claims against Stroud. *Stanger v. City of Santa Cruz*, 653 F.2d 1257, 1257-58 (9th Cir.1980); *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980).

### V. Deficiencies in the Complaint

While the Court will continue to liberally construe Plaintiff's claims, as is required of a self-represented litigant, and Plaintiff will be given a chance to cure the deficiencies of his complaint, the Court wishes to clarify to Mr. Young that certain claims are not appropriate for federal court. For example, as discussed above, Judge Grensky has absolute immunity for any actions taken in his judicial capacity, and no claims against him in that capacity will be allowed.

Similarly, DDA Ben Lull has absolute immunity from suit for actions taken in his prosecutorial capacity, and no claims against him in that capacity will be allowed.

Additionally, claims against officers or caseworkers for "deliberate indifference" can only be made in certain circumstances. For instance, the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact." *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989). However, in order to bring such a claim, the Plaintiff must identify specific deficiencies in the training program and a causal link to the alleged constitutional violation. *Id.* Additionally, this "deliberate indifference" in training is separate and apart from any alleged "deliberate indifference" on the part of an individual officer to protect against harms inflicted by an unrelated civilian. Such a "failure to protect" is not a cause of action under § 1983.

Finally, federal courts are courts of limited jurisdiction. Pursuant to the *Rooker–Feldman* doctrine, federal courts lack subject matter jurisdiction "when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment." *Kongasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004); *Cooper*, 704 F.3d at 777–78. *See also Meek v. Zopan*, 2017 WL 902864, at *3 (D. Or. Mar. 6, 2017). In other words, if Plaintiff is dissatisfied with the outcome of a case in state court, he may not attempt to overturn that outcome by challenging that case in federal court. In order to challenge the outcome of a custody dispute, for instance, a person must appeal that state court judgment to the Oregon Court of Appeals. Attempting to challenge it in federal court is an improper collateral attack. Therefore, any claims asserted by Plaintiff that arise out of a state court proceeding and that attempt to overturn the outcome of that proceeding, will not be allowed.

## ORDER

Based on the foregoing, Plaintiffs' Amended Complaint (#5) is dismissed without prejudice and with leave to refile a Second Amended Complaint within thirty days of this ruling. Plaintiff's IFP application (#2) is held in abeyance and will be considered when the amended complaint is filed.

ORDERED and DATED this 30 day of October, 2017.

MARK D. CLARKE
United States Magistrate Judge